(Del. Rev. 5/2014) Pro Se Employment Discrimination Complaint

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____

__Mahala Duffy__
(Name of Plaintiff or Plaintiffs)

v.

__Delaware State University__

_____
(Name of Defendant or Defendants)

**16 - 711**

2016 AUG 12  PM 1:41

**Civ. Action No.** _____
(To be assigned by Clerk's Office)

### COMPLAINT FOR EMPLOYMENT DISCRIMINATION
(Pro se)

Jury Demand?
☐ Yes
☒ No

1.     This action is brought pursuant to (check all spaces that apply):

     ☒    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, for employment discrimination on the basis of race, color, religion, sex, or national origin.

     ☐    Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.*, for employment discrimination on the basis of age. My year of birth is: _____.

     ☐    Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.*, for employment discrimination on the basis of a disability by an employer which constitutes a program or activity receiving federal financial assistance.

     ☐    Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, for employment discrimination on the basis of disability.

2.    Plaintiff resides at _____ 104   Teah Court _____
                                       (Street Address)
__Dover__       __Kent__       __Delaware__       __19901__
   (City)          (County)        (State)        (Zip Code)
__302  423 - 5903__      . **Attach additional sheets if more than one Plaintiff.**
(Area Code) (Phone Number)

3.    Defendant resides at, or its business is located at _____ 1200   North Dupont Highway ____
                                                        (Street Address)
__Dover__       __Kent__       __Delaware__       __19901__ .(
    City)          (County)        (State)        (Zip Code)

**Attach additional sheets if more than one Defendant.**

1

4.    The discriminatory conduct occurred in connection with plaintiff's employment at, or application

to be employed at, defendant's ___Delaware State University___ place of business
                                        (Defendant's Name)
located at ___1200 North DuPont Highway___
           (Street Address)
___Dover___    ___Kent___    ___Delaware___    ___19901___ .(
    City)          (County)        (State)        (Zip Code)

5.    The alleged discriminatory acts occurred on ___14___, ___January___, ___2014___ .
                                                   (Day)       (Month)         (Year)

6.    The alleged discriminatory practice  ☑ is    ☐ is not    continuing.

7.    On ___30th___, ___July___, ___2015___, Plaintiff filed charges
          (Day)        (Month)       (Year)

with the Department of Labor of the State of Delaware: ___Office of Anti Discrimination___,
                                                              (Agency)
___24 N.W. Front Street Suite 101, The Windsor  Milford  Sussex___
        (Street Address)                          (City)      (County)
___Delaware___    ___19963___, regarding defendant's alleged discriminatory conduct.
    (State)        (Zip Code)

8.    On ___30th___, ___July___, ___2015___, Plaintiff filed charges
          (Day)        (Month)      (Year)

with the Equal Employment Opportunity Commission of the United States regarding defendant's alleged

discriminatory conduct.

9.    The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue

letter which was received by plaintiff on: ___11th___, ___May___, ___2015___ .
                                            (Day)       (Month)        (Year)

**(NOTE:   ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)**

10.   The alleged discriminatory acts, in this suit, concern:

   A. ☐ Failure to employ plaintiff.
   B. ☑ Termination of plaintiff's employment. Plaintiff was terminated from employment on
       the following date: ___September 28, 2015___ .
   C. ☐ Failure to promote plaintiff. Plaintiff was refused a promotion on the following date:
       _____
   D. ☐ Other acts (please specify): ___Hostile Work Environment___
       _____

       _____

       _____

       _____

11.   The conduct of Defendant(s) was discriminatory because it was based on (check all that apply):

      A.  ☐  Plaintiff's race
      B.  ☐  Plaintiff's color
      C.  ☑  Plaintiff's sex
      D.  ☑  Plaintiff's religion
      E.  ☐  Plaintiff's national origin
      F.  ☐  Plaintiff's age
      G.  ☐  Plaintiff's disability

12.    A copy of the charges filed with the Department of Labor of the State of Delaware and/or the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

## (NOTE: ATTACH A COPY OF THE CHARGES FILED WITH THE DEPARTMENT OF LABOR OF THE STATE OF DELAWARE AND/OR THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OF THE UNITED STATES TO THIS COMPLAINT.)

**THEREFORE,** Plaintiff asks the Court to grant such relief as may be appropriate, including but not

limited to (check all that apply):

      A.  ☑  Injunctive relief (specify what you want the Court to order): Create an effective set of procedures in these situations.
      B.  ☑  Back pay.
      C.  ☐  Reinstatement to former position.
      D.  ☑  Monetary damages in the amount of _____.
      E.  ☐  That the Court appoint legal counsel.
      F.  ☑  Such relief as may be appropriate, including costs and attorney's fees.
      G.  ☑  Other (specify): Medical Expenses _____.

**I/We declare under penalty of perjury that the foregoing is true and correct.**

Dated: August 8, 2016

_____
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

---

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Mahala S. Duffy<br>104 Teak Court<br>Dover, DE 19901 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17C-2015-00574 | Natasha Abel,<br>State & Local Coordinator | (215) 440-2650 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| X | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

May 9, 2016

Enclosures(s)

Spencer H. Lewis, Jr.,
District Director

(Date Mailed)

cc:

David K. Sheppard, Esq.
Assistant General Counsel
DELAWARE STATE UNIVERSITY
Office of General Counsel
1200 North DuPont Highway
Dover, DE 19901

Michele D. Allen, Esq.
LAW OFFICES OF MICHELE D. ALLEN, LLC.
Stone Mill Office Plaza
724 Yorklyn Road, Suite 310
Hockessin, DE 19707



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127

## PLEASE READ THE FOLLOWING INFORMATION CAREFULLY

You filed a charge of employment discrimination with one (1) of the following six (6) agencies, which are known as Fair Employment Practices Agencies (FEPA):

> Delaware Department of Labor (DDOL)
> New Jersey Division on Civil Rights (NJDCR)
> Philadelphia Commission on Human Relations (PCHR)
> Pittsburgh Commission on Human Relations (PCHR)
> Reading Human Relations Commission (RHRC)
> West Virginia Human Rights Commission (WVHRC)

At the time you filed your charge with the FEPA, you were notified in writing by the FEPA that it would dual-file your charge for you with the U.S. Equal Employment Opportunity Commission (EEOC) in order to preserve your right to file a lawsuit in Federal District Court. The FEPA processed your charge and notified you in writing of the reason for its closure of your charge. (If you believe that you did not receive a closure notice from the FEPA, contact the FEPA where you filed your charge, <u>not EEOC</u>). The FEPA then notified EEOC of its closure, and the reason for the closure. Based on this notification, EEOC has reviewed and adopted the FEPA findings, and has closed the dual-filed EEOC charge. Therefore, EEOC has issued to you the attached Dismissal & Notice of Rights, which advises you that "EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge". This Dismissal & Notice of Rights authorizes you to file a lawsuit in Federal District Court within 90 days if you choose to do so (please note, however, that you are not obligated to file a lawsuit). EEOC does not encourage or discourage such legal action; the decision is entirely up to you. If you do not wish to file a lawsuit, it is recommended that you keep the Dismissal & Notice of Rights for your record, and you need do nothing else.

If however, you do elect to file a lawsuit, you must do so with a Federal District Court within 90 days of the date you received the Dismissal & Notice of Rights, not the date it is dated (it is recommended that you retain the envelope with the postmark). If you intend to consult an attorney, do so promptly; if you do not have a lawyer, you may contact the EEOC Legal Unit at (215) 440-2828 in order to obtain a list of local attorneys. However, you are responsible for all legal fees incurred by filing a lawsuit, and you are also responsible for ensuring that your lawsuit is filed within the 90-day statute of limitations.

If you are going to file a lawsuit and need to obtain a copy of the information obtained during the FEPA's processing of your charge, make your request promptly in writing <u>to the FEPA that investigated your charge (NOT EEOC)</u>. EEOC does not obtain the FEPA investigative case file.

(Enclosure with EEOC Form 161)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Philadelphia Status Line: (866) 408-8075
Philadelphia Direct Dial: (215) 440-2602
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

Natasha L. Abel
State & Local Program Manager
natasha.abel@eeoc.gov

Direct Dial: (215) 440-2650
Facsimile: (215) 440-2847

Mahala Duffy
104 Teak Court
Dover, DE 19901

RE:   Duffy v. Delaware State University
      EEOC Charge No.: 17C-2015-00574

Dear Ms. Duffy:

As you requested in your letter of March 30, 2016, I have reviewed the findings and the
investigative file of the Delaware Department of Labor (DDOL), as well as the additional
information you provided. This review failed to reveal that the DDOL was deficient in its
investigation of your charges, and specifically, that it did not correctly apply the laws that EEOC
enforces when examining the evidence and reaching its findings of facts. As a result, I am
recommending that the previous finding of the DDOL, that there was no probable cause to
believe that the law had been violated, be upheld.

In view of the above, your charge with EEOC is dismissed. Enclosed herein is a Notice of Rights
which will enable you to file a lawsuit in Federal Court, should you so desire, within 90 days.
We regret that we cannot be of further assistance to you in this matter.

Sincerely,

_May 9, 2016_
Date

Natasha L. Abel
State and Local Program Manager



# Delaware Division of Unemployment Insurance

Case No: 41012231

I, Tammy Jefferson, hereby certify that today, 12/08/2015, I mailed a true and correct copy of the Claims Deputy/Agency Representative decision in the above-referenced matter by first class mail:

M DUFFY
104 TEAK CT
DOVER DE 19901

Claims Deputy/Agency Representative

Case 1:16-cv-00711-RGA   Document 2   Filed 08/12/16   Page 8 of 43 PageID #: 13

**State of Delaware**
**Department of Labor**
**Division of Unemployment Insurance**

 DELAWARE DEPARTMENT OF **LABOR**

**Notice of Determination**
**UC-409**

**Claimant** M DUFFY
**Address** 104 TEAK CT
DOVER DE 19901

**SS Number:** ***-**-2965
**Local Office:** 4
**Fund Code:** 10
**Claim Date:** 11/15/2015
**Date of AC:**
**Case Number:** 41012231

Delivered by Mail
**Redet:** No
**Count:** Yes

**Findings of Fact:**

The claimant worked for Delaware State University until 09/28/2015 at which time she was discharged from her position. According to the employer, the claimant was advised on 09/09 that she was denied by Hartford for short-term disability. The employer advised the claimant to either turn in the medical documentation to Hartford or return to work on 09/14. The claimant failed to report. The claimant was given an extension and a certified letter was sent via Fedex on 9/25 advising to return to work on 09/28. The claimant did not report or contact the employer advising she would not be returning as required.

According to the claimant, she did not receive the letter until after 5:00 pm on 9/28. The claimant indicates she was out of town from 09/25 through 09/28. The claimant provided medical documentation dated 08/31, which indicated the claimant was recommended to be absent for the month of September.

The employer has the burden in a discharge case to show just cause for the claimant's termination. Just cause has been defined as a

**Continued on Page 2**

**Title 19 of Delaware Code 3314(2)**

An individual shall be disqualified for benefits: For the week in which he was discharged from his work for just cause in connection with his work and for each week thereafter until he has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.

**DISQUALIFIED**

**Determination:**

You are disqualified for receipt of benefits, effective with or for week ending 11/21/2015 and for each week thereafter until you have been employed in each of 4 subsequent weeks (whether or not consecutive) and have earned covered wages in employment equal to not less than 4 times the weekly benefit amount.

4 X $328.00 = $1312.00.

**Claims Deputy Signature:** *Jammy Joll*                    **Date:** 12/08/2015

If you disagree with this determination, you should ask the Claims Deputy for an explanation. If you are not satisfied with the explanation, you may file an appeal.

**¡IMPORTANTE! Hay información adicional en la parte posterior de este documento.**

**Claimant and Employer Appeal Rights**

This determination becomes final on    12/18/2015    unless a written appeal is filed. Your appeal must be received or postmarked on or before the date indicated. If the last date to file an appeal falls on a Saturday, Sunday or Legal Holiday, the appeal will be acceptable the next business day.

If you file an appeal and are still unemployed, you must continue to file weekly claim pay authorization forms with the local office,as instructed, until you receive a final decision.

**Employer Name and Address** DELAWARE STATE UNIVERSITY
1200 N DUPONT HWY
DOVER DE 19901

| **State of Delaware**<br>**Department of Labor**<br>**Division of Unemployment Insurance** |  | | **Notice of**<br>**Determination**<br>**UC-409** |
|---|---|---|---|

**Page 2**

| **Claimant** | M DUFFY | **SS Number:** ***-**-2965 | Delivered by Mail |
|---|---|---|---|
| **Address** | 104 TEAK CT | **Local Office:** 4 | **Redet:** No |
| | DOVER DE 19901 | **Fund Code:** 10 | **Count:** Yes |
| | | **Claim Date:** 11/15/2015 | |
| | | **Date of AC:** | |
| | | **Case Number:** 41012231 | |

### Findings:

willful or wanton act in violation of the employer's interests, or of the employee's duties and expected standard of conduct. The employer must show, by evidence, that the claimant's work performance or behavior represented willful or wanton misconduct. Although, the claimant provided medical documentation, dated for 8/31, the employer advised the claimant that Hartford needed additional information regarding her medical condition and the reasoning for a leave of absence extension. The claimant failed to provide the employer and their third party the proper documentation to substantiate her need to continue her medical leave of absence. The claimant also failed to report to work as requested by her employer. Therefore, the employer has proven willful and wanton misconduct in this case. The claimant is disqualified for the receipt of unemployment benefits.



**DELAWARE
DEPARTMENT OF
LABOR
KEEPING
DELAWARE FIRST**

Division of Unemployment Insurance
P. O. Box 616
Dover, DE 19903-0616
(302) 739-5461

## CLAIMANT FACT-FINDING   ISSUE: DISCHARGE

**Claimant Name:** M S DUFFY          **SSN:**  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

**Date:** 11/20/15          **Requested Response Date:**  11/27/15

**Employer:**   DELAWARE STATE UNIVERSITY          **Date of Hire:**  01/06/14

**Employer's Phone No.:** 302-857-7111          **Date of Separation:**  09/28/15

**Please be advised that your separating employer will be sent a similar questionnaire. If you need additional space, use reverse side of this form.**

1. **What was your job title, duties, and supervisor's name?**
   _Senior Secretary, clerical, answering phones, liason to departments, filing, budgeting,_
   _Dr. Sharon Mills-Wisneski_

2. **What was the reason the employer gave for your termination? Please give specific dates and the names of any persons involved.**
   _I recieved a return to work letter, while out on Dr.'s orders, when my initial disability claim was denied._

   **Do you agree with the reason for separation provided by the employer, and if not, why?**
   _No, even though my claim was initially denied I have 90 days to appeal it. I also had not been released from my Dr.'s care. I had been see 3 different professionals for treatment._

3. **Had you received any warnings (specify type) and/or were you aware of company policy addressing this type of incident?**
   _No_

**(OVER)**

**4. What changes did you make, after being warned, to correct the problem?**

By the time I received the letter to return to work. The day already was past. The letter was sent out Sept 25 stating to return to work and I did not receive it until sept 28 after a counseling session

**5. According to your employer. how did your actions or behavior create a problem for the business (i.e. other employees had to cover my shift, store was not open as scheduled, etc.)?**

I received a return to work letter from Human Resources

**6. Additional information:**

I certify that the above statements are true to the best of my knowledge and am aware that there are penalties provided for making false statements in connection with a claim for benefits.

_____
Claimant's Signature

11/30/15
Date

 **Delaware State University Procedure**

| Title: **Discrimination Complaint Resolution Procedure** | Administrative Council approval date: 5/19/08 *(revised)* |
|---|---|
| Related Policies and Procedures: | |

The following procedure is adopted to process complaints alleging violations of the University's policies on Non-discrimination, Equal Employment Opportunity, Equal Educational Opportunity, retaliation, or Sexual Harassment, and will be in addition to any complaint or charges an employee, applicant or student files with State or federal agencies. These procedures apply to all complaints of sexual harassment made against an employee. Complaints of sexual harassment made against a student will be processed under the student sexual harassment procedure. This procedure encompasses complaints under Americans with Disabilities Act, Title II, Section 504 of the Rehabilitation Act, Title IX, and any other State or federal discrimination laws.

The University considers discrimination and/or harassment complaints very serious. The University will investigate all such allegations in a timely way and seek prompt resolution.

**Initiation of a Complaint**

Any employee, applicant, student or any member of the public who alleges a violation of University policy on Non-discrimination, Equal Employment Opportunity, Equal Educational Opportunity, or Sexual Harassment by a University employee must file a complaint with the Assistant Vice President of Human Resources* setting forth the grounds for the complaint. If the complaint is against the Assistant Vice President of Human Resources, the complaint must be filed with the Provost.

**Fact Finding**

The Assistant Vice President of Human Resources* (or the Provost) will initiate the fact-finding process in response to the complaint and attempt to resolve the issue with the complainant.

**Conference with the President**

If the Assistant Vice President of Human Resources* (or Provost) cannot resolve the complaint, the matter will be forwarded to the President of the University with a recommendation based on fact finding. The President will hold an information conference with the parties (together or separately at the President's discretion) and make a finding and decision of whether there has been a violation of University Policy, and the action to be taken.

1

## Confidentiality

All parties and staff will keep the complaint, fact-finding process and conference or hearings confidential, except to the extent that it is necessary to investigate and process the complaint or to meet the requirements of a collective bargaining agreement.

## Reprisals and False Complaints

Persons filing complaints of discrimination, harassment, or retaliation will be protected against reprisals by actions that are appropriate to the circumstances. Those persons filing deliberate false complaints will be subject to disciplinary action including dismissal.

## Disciplinary Action

Substantiated complaints of violation of University policies may subject the offending party to disciplinary action.

Note:   *Indicates that the Assistant Vice President of Human Resources may designate another University administrator to act in his or her absence.

 **Delaware State University Procedure**

| Title: **The Family and Medical Leave** | Administrative Council approval date: 10-24-2007 |
|---|---|
| Related Policies and Procedures: Leave Policy | |

Background -The Family and Medical Leave Act (FMLA) was enacted on February 5, 1993 as a means of balancing the demands of the workplace with the needs of families, and promoting the stability, integrity, and economic security of families in a manner that accommodates the legitimate interests of employers.

The Family and Medial Leave Act entitles an "eligible" employee to take up to 12 work weeks of leave during any 12-month period for certain family and medical reasons. FMLA maintains eligible employees' pre-existing group health insurance coverage during periods of FMLA leave and restores most eligible employees to their same or an equivalent position at the conclusion of their FMLA leave. The following is a brief summary of the major provisions of the federal law and its State application, University Collective Agreements and Professional Employee Handbook.

### 1. Eligibility

To be eligible for FMLA leave, employees must have one year of aggregate Delaware State University service and have been paid for at least 1,250 hours during the prior 12 months.

### 2. Provisions

Eligible employees may take up to 12 work weeks of paid or unpaid FMLA leave (continuous or intermittently) during an FMLA 12- month period. The eligibility period begins on the first day of FMLA leave and runs for 365 days.

### 3. Reasons for Using FMLA

Leave shall be granted for any of the following reasons: to care for an employee's child after birth, or placement for adoption or foster care[1]; to care for an employee's spouse, son, daughter, or parent who has a serious health condition living at home; or for a serious health condition that renders an employee unable to perform his/her job. Under certain circumstances, FMLA leave may be taken on an intermittent basis, or employees

---

[1] Employee FMLA leave entitlement for birth, adoption or placement for foster care expires one year following the date of birth, adoption or placement.

may work a part-time schedule. Such accommodations shall be made only when medically necessary or when agencies agree to a reduced leave schedule.

## 4. Qualifying Conditions

Specific conditions will determine what qualifies as a serious health condition. At least one of the following shall be satisfied: inpatient hospital care; absence from work or school for more than three consecutive calendar days that involves continuing care by a health care provider; continuing treatment for a chronic serious health condition; continuing treatment for a serious health condition that if not treated would result in incapacitation for more than three days; and any period of incapacitated prenatal care.

The three-day waiting period does not apply for pregnancy, chronic serious health conditions, or for multiple treatments.

Common maladies like colds, flu, earaches, headaches other than migraine, etc., are not considered to be serious health conditions. Plastic surgery after injury or removal of a cancerous growth would be considered a serious health condition. Mental illness may be a serious health condition. Cosmetic surgery is not considered a serious health condition unless in-patient hospital care is required.

Continuing treatment means treatment two or more times, or one treatment resulting in a regimen of continuing treatment under the supervision of a health care provider, or continuing supervision but not necessarily being actively treated for a severe long-term or chronic condition.

## 5. Definitions

To determine who is covered under FMLA, the following definitions shall apply: "spouse" means a current husband or wife as defined or recognized under Delaware law for the purposes of marriage. (Delaware does not recognize common-law marriages.) "Parent" means a biological parent or an individual who stands or stood "in loco parentis," meaning, "in place of parent," to the employee when the employee was a child. (This does not extend to a parent "in-law.") "Son" or "daughter" means a biological, adoptive, step, or foster child, a legal ward, or a child of a person standing "in loco parentis" under age 18 or age 18 or older and incapable of self-care because of a mental or physical disability.

## 6. Application

Employees on FMLA shall use available accrued annual and/or accrued sick leave in accordance with the leave policy.

An employee may be on a workers' compensation absence due to an on-the-job injury or illness, which also qualifies as a serious health condition under FMLA. The workers' compensation absence and FMLA leave run concurrently.  If employees are offered a

2

"light duty" assignment, they are permitted but not required to accept the position. Consequently, they may no longer qualify for payments from the workers' compensation benefit plan, but are still entitled to continue on FMLA either until the employee is able to return to the same job or until the 12-week FMLA leave entitlement is exhausted. FMLA leave taken on a part-time or intermittent basis is charged on a pro-rated basis.

## 7. Notice and Medical Certification

Employees are required to provide advanced leave notice and medical certification whenever practical. Ordinarily, 30 days advance notice shall be given when leave is "foreseeable." Medical certification to support a request for FMLA leave is required and the University may also require second or third opinions (at the University's expense) and a "fitness-for-duty" report to return to work.

Employees are responsible for providing the University with the qualifying medical reason. The University will make the FMLA designation within two business days. This designation may be verbal, but shall be followed up in writing. Medical re-certification may be required every 30 days.

The Certification of Health Care Provider can be found at the University's web site at: http://www.desu.edu Human Resources Forms & Templates.

## 8. Job Benefits and Protection

The FMLA provides maintained[2] employee health care coverage for the duration of the leave period. Employees who fail to return to work after their FMLA leave entitlement has been exhausted shall be responsible for their State share under their existing "group health plan" unless they fail to return to work due to their own or eligible family member's serious health condition, or for some other reason beyond their control. Employees are responsible for re-payment of State contributions toward coverage for any unpaid leave if they fail to return to work. Coverage will be reinstated upon an employee's return without waiting until the next open enrollment period. We will not interfere with, restrain, or deny the exercise of any right provided under FMLA. Additionally, we will not discharge or discriminate against any person for opposing any practice made unlawful by FMLA or for their involvement in any proceeding under or relating to FMLA.

---

[2] If an employee on FMLA leave is more than 30 days late in paying the employees contribution for health insurance, the University is no longer obligated to maintain that insurance. However, before dropping coverage, we will provide the employee written notice at least 15 days before coverage is to cease. The notice will advise the employee that coverage will be dropped on a specified date at least 15 days after the date of notice unless payment is made.

3

# POLICY AND PROCEDURES: Equal Opportunity, Harassment and Nondiscrimination

Delaware State University affirms its commitment to promote the goals of fairness and equity in all aspects of the educational enterprise. All complaints under the policies below are subject to resolution using Delaware State University's Equity Resolution Process, as detailed below. The Equity Resolution Process is applicable regardless of the status of the parties involved, who may be members or non-members of the campus community, students, student organizations, faculty, administrators and/or staff. Delaware State University reserves the right to act on incidents occurring on-campus or off-campus, or online, when the conduct could have an on-campus impact or impact on the educational mission of Delaware State University.

> The Vice President for Student Affairs serves as the University's Title IX Coordinator and oversees implementation of Delaware State University's policy on equal opportunity, harassment and nondiscrimination. Reports of discrimination, harassment and/or retaliation should be made to the Title IX Coordinator [or a Deputy Title IX Coordinator] promptly, but there is no time limitation on the filing of complaints, so long as the accused individual remains subject to the University's jurisdiction. Reporting is addressed more specifically in Section 7, below.

This policy applies to behaviors that take place on the campus, at university-sponsored events and may also apply off-campus and to actions online when the Title IX Coordinator determines that the off-campus conduct affects a substantial Delaware State University interest. A substantial Delaware State University interest is defined to include:

a) Any action that constitutes a criminal offense as defined by federal or Delaware law. This includes, but is not limited to, single or repeat violations of any local, state or federal law committed in the locale where the affected Delaware State University campus is located;

b) Any situation where it appears that the accused individual may present a danger or threat to the health or safety of self or others;

c) Any situation that significantly impinges upon the rights, property or achievements of self or others or significantly breaches the peace and/or causes social disorder;

d) Any situation that is detrimental to the educational interests of Delaware State University; and /or

1

e) Any online postings or other electronic communication by any member of the DSU community, including cyber-bullying, cyber-stalking, cyber-harassment, etc. occurring completely outside of Delaware State University's control (e.g., not on Delaware State University networks, websites or between Delaware State University email accounts) will only be subject to this policy when those online behaviors can be shown to cause a substantial on-campus disruption. Otherwise, such communications are considered speech protected under the 1st Amendment to the Constitution.

f) Off-campus discriminatory or harassing speech by employees[1] may be regulated by Delaware State University when such speech is made in an employee's official or work-related capacity.

Inquiries about this policy and procedure may be made internally to:

Title IX Coordinator:
Dr. Stacy L. Downing
Assistant Vice President of Student Affairs
Martin Luther King Student Center
Delaware State University
1200 North DuPont Highway
Dover, DE  19901
Telephone:  302-857-6300
Email:  sdowning@desu.edu

Deputy Title IX Coordinators:
Mary Hill
Senior Associate AD/SWA
302-857-7633
mhill@desu.edu

---

[1] "Employee" for the purpose of this Policy and Process is defined as a person who has been hired to contribute labor or expertise to Delaware State University, and includes, without limitation, all faculty, (regardless of status), staff and administrators.  This includes, but is not limited to, faculty or staff members who engage in instructional or evaluative activities of students and/or who engage in non-academic work, including work as a teaching or research assistant.  Graduate or undergraduate students are also considered employees by the University when they are performing official University supervisory or evaluative roles with respect to other students.

2

Rebecca Fox-Lykens
Director, Center for Teaching & Learning
302-857-6140
rlykens@desu.edu

Brandy Garlic
Resident Director
302-857-8972
bgarlic@desu.edu

Sandra Golson
Assistant to Associate Vice President for Human Resources
302-857-6261
sgolson@desu.edu

Kevin Noriega
Admissions Counselor
302-857-7780
kenoriega@desu.edu

Inquiries may be made externally to:

Office for Civil Rights (OCR)
U.S. Department of Education
400 Maryland Avenue, SW
Washington, DC 20202-1100
Customer Service Hotline #: (800) 421-3481
Facsimile: (202) 453-6012
TDD#: (877) 521-2172
Email: OCR@ed.gov
Web: http://www.ed.gov/ocr


Equal Employment Opportunity Commission (EEOC)
Contact: http://www.eeoc.gov/contact/

## 1. DELAWARE STATE UNIVERSITY POLICY ON NONDISCRIMINATION

Delaware State University adheres to all federal and state civil rights laws banning
discrimination in public institutions of higher education. Delaware State University will not
discriminate against any employee, applicant for employment, student or applicant for

3

admission on the basis of race, hearing status, personal appearance, color, sex, pregnancy, political affiliation, source of income, place of business, residence, religion, creed, ethnicity, national origin (including ancestry), citizenship status, physical or mental disability, age, marital status, family responsibilities, sexual orientation, gender, gender identity, veteran or military status (including special disabled veteran, Vietnam-era veteran, or recently separated veteran), predisposing genetic characteristics, domestic violence victim status or any other protected category under applicable local, state or federal law, including protections for those opposing discrimination or participating in any complaint process on campus or within the Equal Employment Opportunity Commission or other human rights agencies.

This policy covers nondiscrimination in employment and in access to educational opportunities, both of which are to be broadly defined and understood. Therefore, any member of the campus community, guest or visitor who acts to deny, deprive or limit the educational or employment benefits and/or opportunities of any member of the campus community on the basis of their actual or perceived membership in any of the protected classes listed above is in violation of Delaware State University policy on nondiscrimination. When brought to the attention of Delaware State University, any such discrimination will be appropriately remedied by Delaware State University according to the procedures below.

## 2. DELAWARE STATE UNIVERSITY POLICY ON ACCOMMODATION OF DISABILITIES

Delaware State University is committed to full compliance with the Americans With Disabilities Act of 1990 (ADA) and Section 504 of the Rehabilitation Act of 1973, which prohibit discrimination against qualified persons with disabilities, as well as other federal and state laws pertaining to individuals with disabilities. Under the ADA and its amendments, a person has a disability if he or she has a physical or mental impairment that substantially limits a major life activity. The ADA also protects individuals who have a record of a substantially limiting impairment or who are regarded as disabled by the institution whether qualified or not. A substantial impairment is one that significantly limits or restricts a major life activity such as hearing, seeing, speaking, breathing, performing manual tasks, walking or caring for oneself.

The Director of University Accessibility Services has been designated as the ADA/504 Coordinator responsible for coordinating efforts to comply with these disability laws, including reporting of any complaint alleging noncompliance.

### a. Students with Disabilities

Delaware State University is committed to providing qualified students with disabilities with reasonable accommodations and support needed to ensure equal access to the academic

4

programs and activities of Delaware State University.

All accommodations are made on a case-by-case basis. A student requesting any accommodation should first contact the Director of University Accessibility Services who coordinates services for students with disabilities. The director reviews documentation provided by the student and, in consultation with the student, determines which accommodations are appropriate to the student's particular needs and academic programs.

### b. Employees with Disabilities

Pursuant to the ADA, Delaware State University will provide reasonable accommodation(s) to all qualified employees with known disabilities, where their disability affects the performance of their essential job functions, except where doing so would be unduly disruptive or would result in undue hardship.

An employee with a disability is responsible for requesting an accommodation in writing to the Director of University Accessibility Services and providing appropriate documentation. The director will work with the employee's supervisor, Human Resources, Public Safety, and any other necessary University resources to identify which essential functions of the position are affected by the employee's disability and what reasonable accommodations could enable the employee to perform those duties.

## 3. DELAWARE STATE UNIVERSITY POLICY ON DISCRIMINATORY HARASSMENT

Students, staff, administrators, and faculty are entitled to a working and educational environment free of discriminatory harassment. Delaware State University's harassment policy is not meant to inhibit or prohibit educational content or discussions inside or outside of the classroom that include germane, but controversial or sensitive subject matters protected by academic freedom. The sections below describe the specific forms of legally prohibited harassment that are prohibited under Delaware State University policy.

### a. Discriminatory and Bias-Related Harassment

Harassment constitutes a form of discrimination that is prohibited by law. Delaware State University will remedy all forms of harassment when reported, whether or not the harassment rises to the level of creating a hostile environment. When harassment rises to the level of creating a hostile environment, Delaware State University may also impose sanctions on the harasser. Delaware State University's harassment policy explicitly prohibits any form of harassment, defined as unwelcome conduct on the basis of actual or perceived membership in a protected class, by any member or group of the community.

5

A hostile environment may be created by oral, written, graphic, or physical conduct that is sufficiently severe, persistent/pervasive and objectively offensive that it interferes with, limits or denies the ability of an individual to participate in or benefit from educational programs or activities or employment access, benefits or opportunities.[2]

Offensive conduct and/or harassment that does not rise to the level of discrimination or that is of a generic nature not on the basis of a protected status may not result in the imposition of discipline under University policy, but will be addressed through civil confrontation, remedial actions, education and/or effective conflict resolution mechanisms.  For assistance with conflict resolution techniques, employees should contact the Associate Vice President of Human Resources and students should contact the Director of Judicial Affairs.

Delaware State University condemns and will not tolerate discriminatory harassment against any employee, student, visitor or guest on the basis of any status protected by University policy or law.

### b. Sexual Harassment

Both the Equal Employment Opportunity Commission and the State of Delaware regard sexual harassment as a form of sex/gender discrimination and, therefore, as an unlawful discriminatory practice.  Delaware State University has adopted the following definition of sexual harassment, in order to address the special environment of an academic community, which consists not only of employer and employees, but of students as well.[3]

Sexual harassment is:

- unwelcome, sexual or gender-based verbal, written or physical conduct.

Anyone experiencing sexual harassment in any Delaware State University program (academic, athletic, residential or social) is encouraged to report it immediately to the University's Title IX Coordinator.

Sexual harassment creates a hostile environment, and may be disciplined, when it is:

- sufficiently severe, persistent/pervasive and/or objectively offensive that it,

---

[2] This definition of hostile environment is based on Federal Register / Vol. 59, No. 47 / Thursday, March 10, 1994: Department Of Education Office For Civil Rights, Racial Incidents And Harassment Against Students At Educational Institutions Investigative Guidance.  The document is available at http://www.ed.gov/about/offices/list/ocr/docs/race394.html.

[3] Also of relevance is the Office of Civil Rights 2001 statement on sexual harassment, "Revised Sexual Harassment Guidance: Harassment Of Students By School Employees, Other Students, Or Third Parties, Title IX," which can be found at http://www2.ed.gov/legislation/FedRegister/other/2001-1/011901b.html, as well as the April, 2011 Dear Colleague Letter on Campus Sexual Violence, which can be found at:
http://www.whitehouse.gov/sites/default/files/dear_colleague_sexual_violence.pdf

- has the effect of unreasonably interfering with, denying or limiting employment opportunities or the ability to participate in or benefit from any University program, and is

- based on power differentials (*quid pro quo*), the creation of a hostile environment or retaliation.

## POLICY EXPECTATIONS WITH RESPECT TO <u>CONSENSUAL RELATIONSHIPS</u>

*There are inherent risks in any casual, romantic or sexual relationship between individuals in unequal positions (such as faculty and student, supervisor and employee). These relationships may be less consensual than perceived by the individual whose position confers power. The relationship also may be viewed in different ways by each of the parties, particularly in retrospect. Furthermore, circumstances may change, and conduct that was previously welcome may become unwelcome. Even when both parties have consented at the outset to a romantic or sexual involvement, this past consent may not remove grounds for a later charge of a violation of applicable sections of this policy. <u>Therefore, for the personal protection of members of this community, relationships in which power differentials are inherent (faculty-student, staff-student, administrator-student, supervisor-employee) are strongly discouraged even in cases of consensual, casual and/or romantic involvement.</u>*

*Given that a consensual casual and/or romantic or sexual relationships in which one party maintains a direct supervisory or evaluative role over the other party are, at a minimum unethical, therefore, persons with direct supervisory or evaluative responsibilities who are involved in such relationships must bring those relationships to the timely attention of their supervisor. Disclosure of the relationship will likely result in the necessity to remove the employee from the supervisory or evaluative responsibilities, or shift a party out of being supervised or evaluated by someone with whom they have established a consensual relationship. This includes, without limitation, RAs and students over whom they have direct responsibility. While no relationships are forbidden by this policy, failure to self-report such relationships to a supervisor as required will result in disciplinary action for an employee.*

### c. Sexual Misconduct

State law defines various violent and/or non-consensual sexual acts as crimes. Additionally, Delaware State University has defined categories of sexual misconduct, as stated below, for which action under this policy may be imposed. Generally speaking, Delaware State University considers Non-Consensual Sexual Intercourse violations to be the most serious, and therefore typically imposes the most severe sanctions, including suspension or expulsion for students and termination for employees. However, Delaware State University reserves the right to impose any level of sanction, up to and including suspension or expulsion/termination, for any act of sexual misconduct or other gender-based offenses

based on the facts and circumstances of the particular complaint. Acts of sexual misconduct may be committed by any person upon any other person, regardless of the sex, gender, sexual orientation and/or gender identity of those involved.

Violations include:

### i. Sexual Harassment (as defined in section b above)

### ii. Non-Consensual Sexual Intercourse

Defined as:
- any sexual penetration or intercourse (anal, oral or vaginal)
- however slight
- with any object
- by a person upon another person
- that is without consent and/or by force

Sexual penetration includes vaginal or anal penetration by a penis, tongue, finger or object, or oral copulation by mouth to genital contact or genital to mouth contact.

### iii. Non-Consensual Sexual Contact

Defined as:
- any intentional sexual touching
- however slight
- with any object
- by a person upon another person
- that is without consent and/or by force

Sexual touching includes any bodily contact with the breasts, groin, genitals, mouth or other bodily orifice of another individual, or any other bodily contact in a sexual manner.

### iv. Sexual Exploitation

Sexual Exploitation refers to a situation in which a person takes non-consensual or abusive sexual advantage of another, and situations in which the conduct does not fall within the definitions of Sexual Harassment, Non-Consensual Sexual Intercourse or Non-Consensual Sexual Contact. Examples of sexual exploitation include, but are not limited to:

- Sexual voyeurism (such as watching a person undressing, using the bathroom or engaged in sexual acts without the consent of the person(s) observed)
- Taking pictures or video or audio recording another in a sexual act, or in any other private activity without the consent of all involved in the activity, or exceeding the boundaries of consent (such as allowing another person to hide in a closet and observe sexual activity, or disseminating sexual pictures without the photographed person's consent)
- Prostitution
- Sexual exploitation also includes engaging in sexual activity with another person while knowingly infected with human immunodeficiency virus (HIV) or other sexually transmitted disease (STD) and without informing the other person of the infection, and further includes administering alcohol or drugs (such as "date rape" drugs) to another person without his or her knowledge or consent

### v.   Consent

Consent is knowing, voluntary and clear permission by word or action, to engage in mutually agreed upon sexual activity. Since individuals may experience the same interaction in different ways, it is the responsibility of each party to make certain that the other has consented before engaging in the activity. For consent to be valid, there must be a clear expression in words or actions that the other individual consented to that specific sexual conduct.

A person cannot consent if he or she is unable to understand what is happening or is disoriented, helpless, asleep or unconscious for any reason, including due to alcohol or other drugs. An individual who engages in sexual activity when the individual knows, or should know, that the other person is physically or mentally incapacitated has violated this policy.

It is not an excuse that the individual respondent accused of sexual misconduct was him or herself intoxicated and, therefore, did not realize the incapacity of the other.

Incapacitation is defined as a state where someone cannot make rational, reasonable decisions because they lack the capacity to give knowing consent (e.g., to understand the "who, what, when, where, why or how" of their sexual interaction). This policy also covers a person whose incapacity results from mental disability, involuntary physical restraint and/or from the taking of incapacitating drugs.

9

Consent to some sexual contact (such as kissing or fondling) cannot be presumed to be consent for other sexual activity (such as intercourse). A current or previous dating relationship is not sufficient to constitute consent. The existence of consent is based on the totality of the circumstances, including the context in which the alleged incident occurred and any similar previous patterns that may be evidenced. Silence or the absence of resistance alone is not consent. A person can withdraw consent at any time during sexual activity by expressing in words or actions that he or she no longer wants the act to continue, and, if that happens, the other person must stop immediately.

In Delaware, a minor (meaning a person under the age of 12 years) cannot consent to sexual activity. Sexual contact by an adult 20 years of age or older with a person younger than 16 years old is a crime, as well as a violation of this policy, even if the minor wanted to engage in the act. See 11 Del. C. 3761.

The state definition of consent which is applicable to criminal prosecutions for sex offenses in Delaware, may differ somewhat from the definition used in this Policy to address Policy violations.  The Policy definition will control for the purpose of determining violations of and sanctions under this Policy.

## 4. OTHER CIVIL RIGHTS OFFENSES, WHEN THE ACT IS BASED UPON THE STATUS OF A PROTECTED CLASS

- Threatening or causing physical harm, extreme verbal abuse or other conduct which threatens or endangers the health or safety of any person on the basis of their actual or perceived membership in a protected class
- Discrimination, defined as actions that deprive other members of the community of educational or employment access, benefits or opportunities on the basis of their actual or perceived membership in a protected class
- Intimidation, defined as implied threats or acts that cause an unreasonable fear of harm in another on the basis of actual or perceived membership in a protected class
- Hazing, defined as acts likely to cause physical or psychological harm or social ostracism to any person within the Delaware State University community, when related to the admission, initiation, pledging, joining, or any other group-affiliation activity (as defined further in the hazing policy) on the basis of actual or perceived membership in a protected class; hazing is also illegal under Delaware State law and prohibited by Delaware State University policy

10

- Bullying, defined as repeated and/or severe aggressive behavior likely to intimidate or intentionally hurt, control or diminish another person, physically or mentally on the basis of actual or perceived membership in a protected class
- Violence between those in an intimate relationship to each other on the basis of actual or perceived membership in a protected class[4] (this includes romantic relationships, domestic and/or relationship violence)
- Stalking, defined as a course of conduct directed at a specific person on the basis of actual or perceived membership in a protected class that is unwelcome and would cause a reasonable person to feel fear[5]
- Violation of any other Delaware State University rules, when a violation is motivated by the actual or perceived membership of the victim in any protected class, may be pursued using this policy and process

The sanctions for committing any of these violations will depend upon the circumstances and facts surrounding the violation.

## 5. RETALIATION

Retaliation is defined as any adverse action taken against a person participating in a protected activity because of their participation in that protected activity. Retaliation against an individual for alleging harassment, supporting a complainant or for assisting in providing information relevant to a claim of harassment is a serious violation of Delaware State University policy and will be treated as another possible instance of harassment or discrimination. Acts of alleged retaliation should be reported immediately to the Title IX Coordinator or to a member of the Equity Resolution Panel (see below) and will be promptly investigated.  Delaware State University will take appropriate steps to protect individuals who fear that they may be subjected to retaliation.

---

[4] The state definition of domestic violence is [10 Del. C.§1041]: "Domestic violence" means abuse perpetrated by one member against another member of the following protected classes: (a) Family...; or (b) Former spouses; persons cohabitating together who are holding themselves out as a couple, with or without a child in common; persons living separate and apart with a child in common; or persons in a current or former substantive dating relationship. This definition is applicable to criminal prosecutions, but differs from the DSU definition for policy violations.

[5] The state definition of stalking is [11 Del. C. § 1312]: (a) a person is guilty of stalking when the person knowingly engages in a course of conduct directed at a specific person and that conduct would cause a reasonable person to: (1) fear physical injury to himself or herself or that of another person; or (2) suffer other significant mental anguish or distress that may, but does not necessarily, require medical or other professional treatment or counseling.  Again, the state definition will be used for criminal prosecutions; the DSU definition for policy violations.

11

**6. REMEDIAL ACTION**

Delaware State University will implement initial remedial and responsive actions upon notice of alleged harassment, retaliation and/or discrimination, and will take additional prompt remedial and/or disciplinary action with respect to any member of the community, guest or visitor who has been found to engage in harassing or discriminatory behavior or retaliation. Procedures for handling reported incidents are fully described below. Deliberately false and/or malicious accusations of harassment, as opposed to complaints which, even if erroneous, are made in good faith, are just as serious an offense as harassment itself, and will be subject to appropriate disciplinary action.

**7. CONFIDENTIALITY AND REPORTING OF OFFENSES UNDER THIS POLICY**

Delaware State University officials, depending on their roles at the University, have varying reporting responsibilities and abilities to maintain confidentiality. In order to make informed choices, one should be aware of confidentiality and mandatory reporting requirements when consulting campus resources. On campus, some resources may maintain confidentiality, offering options and advice without any obligation to inform an outside agency or individual unless you have requested information to be shared. Other resources exist for you to report crimes and policy violations and these resources will take action when you report victimization to them. Most resources on campus fall in the middle of these two extremes; neither Delaware State University, nor the law, requires them to divulge private information that is shared with them, except in rare circumstances. The following describes the three reporting options at Delaware State University:

      **a.**     **Confidential Reporting**

      If a reporting party would like the details of an incident to be kept confidential, the reporting party may speak with on-campus counselors, campus health service providers, off-campus local rape crisis counselors, domestic violence resources or, local or state assistance agencies, all of whom will maintain confidentiality except in extreme cases of immediacy of threat or danger or abuse of a minor. Campus counselors are available for students and the Employee Assistance Program is available for employees to help free of charge and can be seen on an emergency basis during normal business hours.

      **b.**     **Formal Reporting Options**

      University employees have a duty to report, unless they fall under the section above. Parties bringing a complaint may want to consider carefully whether

they share personally identifiable details with non-confidential employees, as those details must be shared by the employee with the Title IX Coordinator and/or Deputy Coordinators. Non-confidential employees must share all details of the reports they receive. If a complainant does not wish for their name to be shared, does not wish for an investigation to take place, or does not want a formal resolution to be pursued, the complainant may make such a request to the Title IX Coordinator or Deputy Coordinators, who will evaluate that request in light of the duty to ensure the safety of the campus and comply with federal law.

In cases indicating pattern, predation, threat and/or violence, the University will be unable to honor a request for confidentiality. In cases where the victim requests confidentiality and the circumstances allow the University to honor that request, the University will offer interim support and remedies to the victim and the community, but will not otherwise pursue formal action. A party bringing a complaint has the right, and can expect, to have complaints taken seriously by the University when formally reported, and to have those incidents investigated and properly resolved through these procedures. Formal reporting still affords privacy to the reporter, and only a small group of officials who need to know will be told, including but not limited to: e.g. the Division of Student Affairs, Public Safety, or the Threat Assessment Team. Information will be shared only as necessary with investigators, witnesses and the responding party. The circle of people with this knowledge will be kept as tight as possible to preserve the privacy rights of the party bringing a complaint. Additionally, anonymous reports can be made by victims and/or third parties using the online reporting form posted at https://www.desu.edu/TitleIX. Note that these anonymous reports may prompt a need for the institution to investigate.

## 8. FEDERAL TIMELY WARNING OBLIGATIONS

Victims of sexual misconduct should be aware that Delaware State University administrators must issue timely warnings for incidents reported to them that pose a substantial threat of bodily harm or danger to members of the campus community. Delaware State University will make every effort to ensure that a victim's name and other identifying information is not disclosed, while still providing enough information for community members to make safety decisions in light of the potential danger.

# EQUITY RESOLUTION PROCESS FOR RESOLVING COMPLAINTS OF HARASSMENT, SEXUAL MISCONDUCT AND OTHER FORMS OF DISCRIMINATION

Delaware State University will act on any formal or informal complaint or notice of violation of the policy on Equal Opportunity, Harassment and Nondiscrimination that is received by the Title IX Coordinator, deputies, any member of the Equity Resolution Panel or a member of the administration.  As noted above, confidentiality will be maintained where possible and desired, but safety and security of the campus must be the first and controlling objective.

The procedures described below will apply to all complaints involving members of the University community, whether students, staff or faculty members.  Redress and requests for responsive actions for complaints brought against non-members of the community are also covered by these procedures.

## 1. Equity Resolution Panel (ERP)

Members of the ERP are announced in an annual distribution of this policy to campus, prospective students, their parents and prospective employees.  The list of members and a description of the panel can be found at https://www.desu.edu/TitleIX.   Members of the ERP are trained annually in all aspects of the resolution process, and can serve in any of the following roles, at the direction of the Title IX Coordinator or his/her designee:

- To provide sensitive intake and initial counseling of complainants
- To serve in a mediation role in conflict resolution
- To investigate complaints
- To act as advisors to those involved in complaints
- To serve on hearing panels for complaints
- To serve on appeal panels for complaints

ERP members also recommend proactive policies, and serve in an educative role for the community. The President, in consultation with the Title IX Coordinator and such others as the President deems desirable, appoints the panel, which reports to the Title IX Coordinator. ERP members receive annual training organized by the Title IX Coordinator, including a review of Delaware State University policies and procedures, so that they are able to provide accurate information to members of the community. All ERP members are required to attend this annual training.

14

The Equity Resolution Panel will include approximately twenty (25) members from across the campus. It will be representative of the DSU community, except that students will not normally be asked to serve on the ERP.

Panel members are usually appointed to three-year terms (initial appointments will be staggered to avoid losing all experienced members every three years). Appointments to the ERP should be made with attention to representation of groups protected by the harassment and non-discrimination policy. Individuals who are interested in serving on the ERP are encouraged to contact the Title IX Coordinator.

## 2. Filing a Complaint

Any member of the community, guest or visitor who believes that the policy on Equal Opportunity, Harassment and Nondiscrimination has been violated should contact the Title IX Coordinator, deputies or a member of the ERP. It is also possible for employees to notify a supervisor, or for students to notify an administrative advisor or faculty member, or any member of the community may contact Public Safety. These individuals will in turn notify the Title IX Coordinator. The Delaware State University website also includes a reporting form at _____which may be used to initiate a complaint.

All employees receiving reports of a potential violation of Delaware State University policy are expected to promptly contact the Title IX Coordinator, within 24 hours of becoming aware of a report or incident. All initial contacts will be treated with the maximum possible privacy: specific information on any complaints received by any party will be reported to the Title IX Coordinator, but, subject to the University's obligation to redress violations, every effort will be made to maintain the privacy of those initiating a report of a complaint. In all cases, Delaware State University will give consideration to the complainant with respect to how the complaint is pursued, but reserves the right, when necessary to protect the community, to investigate and pursue a resolution when an alleged victim chooses not to initiate or participate in a formal complaint.

## 3. Complaint Intake

Following receipt of a notice or a complaint, the Title IX Coordinator[6] will promptly assign an ERP panel member to work as advisor to the person bringing the complaint or that person

---

[6] If circumstances require, the President or Title IX Coordinator may designate another person to oversee the process below, should a complaint be made against the Coordinator or the Coordinator be otherwise unavailable or unable to fulfill his/her duties.

15

may choose from the ERP pool or choose a non-trained advisor from outside the pool, or proceed without an advisor. The accused will have the same rights to an advisor, either appointed by the Coordinator or selected by the accused. Normally, within two business days, an initial determination is made whether a policy violation may have occurred and/or whether conflict resolution might be appropriate. If the complaint does not appear to allege a policy violation or if conflict resolution is desired by the person bringing the complaint, and it appears appropriate given the nature of the alleged behavior, then the complaint does not proceed to investigation.

A full investigation will necessarily be pursued if there is evidence of a pattern of misconduct or a perceived threat of further harm to the community or any of its members. Delaware State University aims to complete all investigations within a 60 business day time period, which can be extended as necessary for appropriate cause by the Title IX Coordinator with notice to the parties.

## 4. Investigation

If a complainant wishes to pursue a formal complaint or if Delaware State University, based on the alleged policy violation, wishes to pursue a formal complaint, then the Title IX Coordinator appoints ERP members to conduct the investigation, such appointments usually occurring within two business days of determining that a complaint should proceed. Investigation of complaints brought directly by those alleging harm should be completed expeditiously. Investigation may take longer when initial complaints fail to provide direct, first-hand information. Delaware State University may agree to a short delay to allow evidence collection when criminal charges on the basis of the same behaviors that invoke this process are being investigated. University action will not be altered or precluded on the grounds that civil or criminal charges involving the same incident have been filed or that charges have been dismissed or reduced. All investigations will be thorough, reliable and impartial, and will entail interviews with all relevant parties and witnesses, obtaining available evidence and identifying sources of expert information, if necessary.

## 5. Interim Remedies

If, in the judgment of the Title IX Coordinator, the safety or well-being of any member(s) of the campus community may be jeopardized by the presence on-campus of the accused individual or the ongoing activity of a student organization whose behavior is in question, the Title IX Coordinator (or designee) may provide interim remedies intended to address the short-term effects of harassment, discrimination and/or retaliation, i.e., to redress harm to the alleged victim and the community and to prevent further violations. These remedies may include referral to counseling and health services or to the Employee Assistance Program, education of the community, altering the housing situation of an accused student or resident employee (or the alleged victim, if desired), altering work arrangements for employees,

16

providing campus escorts, implementing contact limitations between the parties, offering adjustments to academic deadlines, course schedules, etc.

Delaware State University may suspend a student, employee or organization on an interim basis pending the completion of ERP investigation and procedures. In all cases in which an interim suspension is imposed, the student, employee or student organization will be given the opportunity to meet with the Title IX Coordinator prior to such suspension being imposed, or as soon thereafter as reasonably possible, to show cause why the suspension should not be implemented. The Title IX Coordinator has sole discretion to implement or stay an interim suspension under the policy on Equal Opportunity, Harassment and Nondiscrimination, and to determine its conditions and duration. Violation of an interim suspension under this policy will be grounds for expulsion or termination.

During an interim suspension or administrative leave, a student or employee may be denied access to Delaware State University housing and/or Delaware State University campus/facilities/events. As determined by the Title IX Coordinator or designee, this restriction includes classes and/or all other Delaware State University activities or privileges for which the student or employee might otherwise be eligible. At the discretion of the Title IX Coordinator or designee, alternative coursework options may be pursued to ensure as minimal an academic impact as possible on the accused student or employee. Employees suspended on a interim basis will normally continue to be paid during the suspension.

## 6. Complaint Resolution

During or upon the completion of investigation, the investigators will meet with the Title IX Coordinator. Based on that meeting, the Title IX Coordinator will make a decision on whether there is reasonable cause to proceed with the complaint.  If the Title IX Coordinator decides that no policy violation has occurred or that the preponderance of evidence (i.e., whether it is more likely than not that the accused individual committed each alleged violation) does not support a finding of a policy violation, then the process will end unless the complainant requests that the Title IX Coordinator make a determination to re-open the investigation or to forward the matter for a hearing. This decision lies in the sole discretion of the Title IX Coordinator. If there is reasonable cause, the Title IX Coordinator will direct the investigation to continue, or if there is a preponderance of evidence of a violation, then the Title IX Coordinator may recommend conflict resolution, a resolution without a hearing or a formal hearing, based on the below criteria.

### a. Conflict Resolution

Conflict resolution is often used for less serious, yet inappropriate, behaviors and is encouraged as an alternative to the formal hearing process to resolve conflicts.  The Title IX Coordinator will determine if conflict resolution is appropriate, based on the

willingness of the parties, the nature of the conduct at issue and the susceptibility of
the conduct to conflict resolution.  In a conflict resolution meeting, an ERP member
will facilitate a dialogue with the parties to an effective resolution, if possible.
Sanctions may not be imposed through a conflict resolution process, although the
parties may agree to appropriate remedies.  The Title IX Coordinator will keep
records of any resolution that is reached, and failure to abide by the accord may
result in further appropriate responsive actions.

Conflict resolution will not be the primary resolution mechanism used to address
complaints of sexual misconduct or violent behavior of any kind or in other cases of
serious violations of policy, though it may be made available after the formal process
is completed should the parties and the Title IX Coordinator believe that it could be
beneficial.  It is not necessary to pursue conflict resolution first in order to make a
formal ERP complaint, and anyone participating in conflict resolution can stop that
process at any time and request a formal hearing.

**b. Resolution Without a Hearing**

Resolution without a hearing can be pursued for any behavior that falls within the
policy on Equal Opportunity, Harassment and Nondiscrimination, at any time during
the process.  The Title IX Coordinator will provide written notification of a
complaint to any member of the Delaware State University community who is
accused of an offense of harassment, discrimination, or retaliation.  The Title IX
Coordinator will meet with the responding individual to explain the finding(s) of the
investigation.  Once informed, if the respondent admits responsibility for all or part
of the alleged policy violations at any point in the process, the Title IX Coordinator
will render a finding that the individual is in violation of Delaware State University
policy for the admitted conduct, and will normally proceed to convene a formal
hearing on any remaining disputed violations.  For admitted violations, the Chair of
the ERP will recommend an appropriate sanction or responsive action.  If the
sanction/responsive action is accepted by both the complainant and respondent, the
Title IX Coordinator will implement it, and act promptly and effectively to remedy
the effects of the admitted conduct upon the victim and the community.  If either
party rejects the sanction/responsive action, an ERP hearing will be held on the
sanction/responsive action only, according to the ERP procedures below, except in
the case of at-will employees for whom findings and responsive actions will be
determined by the Title IX Coordinator, based on the results of the investigation.
Likewise, if the respondent refuses to admit responsibility for the policy violations,
the matter will be referred to a formal ERP hearing.

18

needed, to meet the resolution timeline followed by the University and remain within the 60-day goal for resolution.

**c. Hearing Procedures**

ERP Hearings will be convened, usually within one to two weeks of the completion of the investigation, and will be conducted in private. The ERP has the authority to hear all collateral misconduct, meaning that it hears all allegations of discrimination, harassment and retaliation, but also may hear any additional alleged policy violations that have occurred in concert with the discrimination, harassment or retaliation, even though those collateral allegations may not specifically fall within ERP jurisdiction. Accordingly, investigations should be conducted with as wide a scope as necessary.

Participants will include the non-voting Chair, the three members of the panel, the investigator(s) who conducted the investigation on the complaint, the complainant and respondent(s) (or up to three organizational representatives in a case where an organization is charged), advisors to the parties and any called witnesses. The Chair will provide the names of witnesses Delaware State University intends to call, all pertinent documentary evidence and any written findings from the investigators to the parties at least two business days prior to the hearing. In addition, the parties will be given a list of the names of each of the ERP panel members at least two business days in advance of the hearing. Should any party object to any panelist, he/she must raise all objections, in writing, to the Chair immediately. Panel members will only be unseated if the Chair, in consultation with the Title IX Coordinator or designee, concludes that their bias precludes an impartial hearing of the complaint. Additionally, any panelist or Chair who feels he/she cannot make an objective determination must recuse himself or herself from the proceedings when notified of the identity of the parties and witnesses in advance of the hearing.

The Chair, in consultation and agreement with the parties and investigators, may decide in advance of the hearing that certain witnesses do not need to be physically present if their testimony can be adequately summarized by the investigator(s) during the hearing. All parties will have ample opportunity to present facts and arguments in full and question all present witnesses during the hearing, though formal cross-examination is not used between the parties. If alternative questioning mechanisms are desired (screens, Skype, questions directed through the Chair, etc.), the parties should request them from the Chair at least two business days prior to the hearing.

Once the procedures are explained and the participants are introduced, the

20

investigator(s) will present the report of the investigation first, and be subject to questioning by the parties and the ERP. The investigator(s) will be present during the entire hearing process, but not during deliberations of the Panel. The findings of the investigation are not binding on the panel, though any undisputed conclusions of the investigation report will not be revisited and will be accepted as binding on the panel, except as necessary to determine sanctions/responsive actions. Once the report of the investigation has been presented, the ERP will permit questioning of and by the parties, and of any present witness. Questions may be directed solely to and through the panel at the discretion of the Chair.

Formal rules of evidence will not apply. Any evidence that the panel believes is relevant and credible may be considered, including history and pattern evidence. The Chair will address any evidentiary concerns prior to and/or during the hearing, may exclude irrelevant or immaterial evidence and may ask the panel to disregard evidence lacking in credibility. The Chair will determine all questions of procedure and evidence. Anyone appearing at the hearing to provide information will respond to questions on his/her own behalf.

Unless the Chair determines it is appropriate, no one will present information or raise questions concerning: (1) incidents not directly related to the possible violation, unless allegations of a pattern have been made, or (2) the sexual history of or the character of the victim/complainant.

Where issues of competency or job performance are concerned, the panel will not substitute its judgment of competency or performance for the judgment of other appropriate campus officials; the function of the hearing panel is to determine whether violations of the Delaware State University's policies regarding harassment and nondiscrimination have been committed, and issues of competency or performance may only be considered in that context.

There will be no observers in the hearing. The Chair may allow witnesses who have relevant information to appear at a portion of the hearing in order to respond to specific questions from the panel or the parties involved. The panel does not hear from character witnesses, but will accept up to two letters supporting the character of the individuals involved.

In hearings involving more than one accused individual or in which two complainants have accused the same individual of substantially similar conduct, the standard procedure will be to hear the complaints jointly; however, the Title IX Coordinator may permit the hearing pertinent to each respondent to be conducted separately. In joint hearings, separate determinations of responsibility will be made for each respondent.

21

Proceedings are private. All persons present at any time during the hearing are expected to maintain the privacy of the proceedings, subject to Delaware State University disciplinary consequences for failure to do so. While the contents of the hearing are private, the parties have discretion to share their own experiences if they so choose, and should discuss doing so with their advisors.

Hearings are recorded, by the Panel only, for purposes of review in the event of an appeal. ERP members, the parties and/or the persons who initiated the action, and appropriate administrative officers of Delaware State University will be allowed to listen to the recording in a location determined by the Title IX Coordinator or designee. No person will be given or be allowed to make a copy of the recording without permission of the Title IX Coordinator. Persons given access to the recording will be required to sign an agreement confirming that they will protect the privacy of the information contained in the recording.

### d. Decisions

The ERP will deliberate in closed session to determine whether the respondent is responsible or not responsible for the violation(s) in question. The panel will base its determination on a preponderance of the evidence (i.e., whether it is more likely than not that the accused individual committed each alleged violation). If an individual respondent or organization is found responsible by a majority of the panel, the panel will recommend appropriate sanctions to the Title IX Coordinator.

The Chair will prepare a written deliberation report and deliver it to the Title IX Coordinator, detailing the finding, how each member voted, the information cited by the panel in support of its recommendation and any information the hearing panel excluded from its consideration and why. The report should conclude with any recommended sanctions. This report should normally not exceed two pages in length and must be submitted to the Title IX Coordinator within two (2) days of the end of panel deliberations.

The Title IX Coordinator will inform the accused individual and the complainant of the final determination within 2 business days of completion of the hearing or receipt of the Chair's report, whichever is later. There will be no substantial delay between notice to each of the parties. Notification will be made in writing and may be delivered by any reasonable means. Once sent by the chosen means, notice will be presumptively delivered.

### e. Sanctions

22

Sanctions or responsive actions will be determined by the ERP panel hearing the case. Factors considered when determining a sanction/responsive action may include:

- The nature, severity of, and circumstances surrounding the violation
- An individual's disciplinary history
- Previous complaints or allegations involving similar conduct
- Any other information deemed relevant by the ERP panel
- The need for sanctions/responsive actions to bring an end to the discrimination, harassment and/or retaliation
- The need for sanctions/responsive actions to prevent the future recurrence of discrimination, harassment and/or retaliation
- The need to remedy the effects of the discrimination, harassment and/or retaliation on the victim and the community

### i. Student Sanctions

The following are the usual, but not the exclusive, sanctions that may be imposed upon students or student organizations singly or in combination:

- o *Warning:* A formal statement that the behavior was unacceptable and a warning that further infractions of any Delaware State University policy, procedure or directive will result in more severe sanctions/responsive actions.
- o *Probation:* A written reprimand for violation of the Code of Student Conduct, providing for more severe disciplinary sanctions in the event that the student or organization is found in violation of any Delaware State University policy, procedure or directive within a specified period of time. Terms of the probation will be specified and may include denial of specified social privileges, exclusion from co-- curricular activities, non-contact orders and/or other measures deemed appropriate.
- o *Suspension:* Termination of student status for a definite period of time not to exceed three years, and/or until specific criteria are met. Students who return from suspension are automatically placed on probation through the remainder of their tenure at Delaware State University. This sanction may be noted as a Conduct Suspension on the student's official transcript.
- o *Expulsion:* Permanent termination of student status, revocation of rights to be on campus for any reason or attend Delaware State University-sponsored events.  This sanction will be noted as a Conduct Expulsion on the student's official transcript.
- o *Withholding Diploma.* Delaware State University may withhold a

23

student's diploma for a specified period of time and/or deny a student participation in commencement activities if the student has a complaint pending, or as a sanction if the student is found responsible for an alleged violation.

o   *Revocation of Degree.* Delaware State University reserves the right to revoke a degree awarded from Delaware State University for fraud, misrepresentation or other violation of Delaware State University policies, procedures or directives in obtaining the degree, or for other serious violations committed by a student prior to graduation.

o   *Organizational Sanctions.* Deactivation, de-recognition, loss of all privileges (including University registration), for a specified period of time.

o   *Other Actions:* In addition to or in place of the above sanctions, Delaware State University may assign any other sanctions as deemed appropriate.

### ii. Employee Sanctions

Sanctions for an employee who has engaged in harassment, discrimination and/or retaliation include warning, required counseling, demotion, suspension with pay, suspension without pay and termination, or any other sanctions as deemed appropriate.

### f. Withdrawal or Resignation While Charges Pending

Students: Delaware State University does not permit a student to withdraw if that student has a complaint pending for violation of the policy on Equal Opportunity, Harassment and Nondiscrimination, or for charges under the Code of Student Conduct.  Should a student decide to leave and not participate in the investigation and/or hearing, the process will nonetheless proceed in the student's absence to a reasonable resolution and that student will not be permitted to return to Delaware State University unless all sanctions have been satisfied.

Employees: Should an employee resign while charges are pending, the records of the Title IX Coordinator will reflect that status, as will Delaware State University responses (which will always be in writing) to any future inquiries regarding employment references for that individual.  The Title IX Coordinator will act to promptly and effectively remedy the effects of the conduct upon the victim and the community.

### g. Appeals

All requests for appeal must be submitted in writing to the Title IX Coordinator within three (3) business days of the delivery of the written finding of the ERP. Requests must state the explicit grounds for the appeal.

A three-member panel of the ERP designated by the Title IX Coordinator, none of whom were involved in the complaint previously, will consider all appeal requests. Any party may request an appeal, but appeals are limited to the following:

- A procedural error or omission occurred that significantly impacted the outcome of the hearing (e.g. substantiated bias, material deviation from established procedures, etc.).
- To consider new evidence, <u>unknown or unavailable</u> during the original hearing or investigation, that could substantially impact the original finding or sanction. A summary of this new evidence and its potential impact must be included.
- The sanctions imposed are substantially disproportionate to the severity of the violation or fall outside the range of sanctions the Delaware State University has designated for this offense.

The appeals panel of the ERP will review the appeal request(s). The original finding and sanction/responsive actions will stand if the appeal is not timely or is not based on at least one of the grounds listed above, and such a decision is final. When any party requests an appeal, the other party (parties) will be notified and joined in the appeal. The party requesting appeal must show that the grounds for an appeal request have been met, and the other party or parties may show the grounds have not been met, or that additional grounds are met. The original finding and sanction are presumed to have been decided reasonably and appropriately.

Where the ERP appeals panel finds that at least one of the appellate grounds is satisfied, additional principles governing the hearing of appeals include the following:

- Appeals decisions by the ERP appeals panel are to be deferential to the original decision, making changes to the finding only where there is clear error and to the sanction/responsive action only if there is a compelling justification to do so.
- Appeals are not intended to be full rehearings of the complaint. In most cases, appeals are confined to a review of the written documentation or record of the original hearing, and pertinent documentation regarding the grounds for appeal. The appeals panel may elect to listen to the recording of the original hearing, in its sole discretion. Appeals granted based on new evidence should normally be remanded to the original hearing panel for reconsideration. Other appeals may be remanded at the discretion of the Title IX Coordinator or heard by the ERP appeals panel.
- Sanctions imposed are implemented immediately unless the Title IX Coordinator or

25

designee stays their implementation in extraordinary circumstances, pending the outcome of the appeal.

- The Title IX Coordinator will normally, after conferring with the ERP appeals panel, render a written decision on the appeal to all parties within 2-3 business days from hearing of the appeal.
- All parties must be informed of whether the grounds for an appeal are accepted and the results of the appeal decision.
- Once an appeal is decided, the outcome is final: further appeals are not permitted.

### h.  Failure to Complete Sanctions/Comply with Responsive Actions

All respondents are expected to comply with conduct sanctions/responsive/corrective actions within the time frame specified by the Title IX Coordinator. Failure to follow through on conduct sanctions/responsive/corrective actions by the date specified, whether by refusal, neglect or any other reason, may result in corrective actions which may include suspension, expulsion and/or termination from Delaware State University. A suspension will only be lifted when compliance is achieved to the satisfaction of the Title IX Coordinator.

### i.  Records and Continued Privacy

In implementing this policy, records of all complaints, resolutions, and hearings will be kept by the Title IX Coordinator indefinitely in the Title IX Coordinator database.  Those records will be kept private and confidential, and the information contained therein revealed only in response to a valid governmental request, a court-ordered subpoena, or pursuant to a release signed by the individual requesting the information and seeking information solely about his/her personal conduct.

### j.  Statement of Complainant's Rights

- To be treated with respect by Delaware State University officials.
- To take advantage of campus support resources (such as Counseling & Psychological Services, the Office of the Chaplains, and Delaware State University Student Health Services, or EAP services for employees).
- To experience a safe living, educational and work environment.
- To have an advisor during this process.
- To refuse to have an allegation resolved through conflict resolution procedures.
- To receive amnesty for minor student misconduct (such as alcohol or drug violations) that is ancillary to the incident.
- To be free from retaliation.
- To have complaints heard in substantial accordance with these procedures.

26

- To full participation of the injured party in any ERP process whether the injured party is serving as the complainant or Delaware State University is serving as complainant.
- To be informed in writing of the outcome/resolution of the complaint, sanctions where permissible and the rationale for the outcome where permissible.
- Refer to law enforcement and have assistance.
- Housing and living accommodations if required as interim measures.
- No contacts between the parties if required.

### k. Statement of Respondent's Rights

- To be treated with respect by Delaware State University officials.
- To take advantage of campus support resources (such as Counseling & Psychological Services, the Office of the Chaplains, and Delaware State University Student Health Services, or EAP services for employees).
- To have an advisor during this process.
- To refuse to have an allegation resolved through conflict resolution procedures.
- To have complaints heard in substantial accordance with these procedures.
- To full participation of the injured party in any ERP process whether the injured party is serving as the complainant or Delaware State University is serving as complainant.
- To be informed of the outcome/resolution of the complaint and the rationale for the outcome, in writing.

### 8. Revision

These policies and procedures will be reviewed and updated annually or more frequently, if required, by the Title IX Coordinator in consultation with the University General Counsel. Suggested improvements or changes from any member of the University community will always be considered.   The Title IX Coordinator may make minor modifications to procedures that do not materially jeopardize the fairness owed to any party. However, the Title IX Coordinator may also vary procedures materially with notice (on the institutional website, with appropriate date of effect identified) upon determining that changes to law or regulation require policy or procedural alterations not reflected in this policy and procedure. Policy and procedures in effect at the time of an offense will apply even if they are changed subsequently, unless the parties consent to be bound by the revised policy or procedures.

This policy and procedure was implemented on June 1, 2014.

27

